(September 14, 1993)

■ INVESTIGATIVE GROUP INC., Respondent, v IVANA TRUMP, Appellant. [601 NYS2d 907] —Appeal from an order, Supreme Court, New York County (Shirley Fingerhood, J.), entered August 4, 1992, which granted plaintiff summary judgment on its breach of contract cause of action, directed a hearing before a Special Referee to hear and report with recommendations regarding the reasonable charges for plaintiff's services, and denied defendant's cross motion to compel plaintiff's compliance with defendant's discovery demands, is *sua sponte*

dismissed, without costs, as superseded by an appeal from an order of the same court, entered January 19, 1993, granting reargument.

Order, Supreme Court, New York County (Shirley Fingerhood, J.), entered January 19, 1993, which granted plaintiff's motion for reargument, and upon reargument modified the court's August 4, 1992 order to grant plaintiff summary judgment against defendant on its causes of action for account stated in the sum of $277,197.68, inclusive of interest, and which denied defendant's cross motion for reargument of the denial of discovery, unanimously reversed, on the law, to deny summary judgment and grant defendant's cross motion to compel discovery, with costs.

In this action for breach of contract and account stated, plaintiff seeks to recover for investigative services it rendered on behalf of defendant in connection with her matrimonial action against her husband, Donald Trump. Defendant's primary attorney in the matrimonial action, Michael Kennedy, had retained plaintiff pursuant to a written retainer agreement. During a five and one-half month period beginning in April 1990, plaintiff rendered services and billed defendant a total of $308,755.17. Defendant refused to pay more than $75,000 of the total billed.

It is undisputed that shortly after plaintiff was retained, Kennedy informed plaintiff, in writing, that defendant had established a monetary cap of $100,000 for its investigative services. Nevertheless, Kennedy subsequently authorized plaintiff to pursue its investigation in excess of the $100,000 limitation and assured plaintiff that defendant would pay for the services rendered. In granting plaintiff summary judgment, the court rejected defendant's argument that a question of fact existed as to whether Kennedy was authorized to consent to services over the $100,000 limitation imposed by defendant.

First, the evidence submitted does not support a finding as a matter of law that Kennedy had actual authority to consent to services beyond the $100,000 limitation (see, Hedeman v Fairbanks, Morse & Co., 286 NY 240, 248-249). The fact that defendant authorized Kennedy to retain plaintiff established that an agency relationship existed, but did not demonstrate, as the IAS Court suggested, that any and all instructions given by Kennedy were within the scope of his authority. Indeed, the undisputed evidence is that Kennedy's authority was circumscribed by defendant's directive that she would pay

plaintiff a maximum fee of $100,000. Furthermore, it is undisputed that this restriction was communicated to plaintiff. Kennedy's self-serving deposition testimony that defendant subsequently agreed to pay for services beyond the $100,000 restriction is not a sufficient basis for finding that Kennedy had actual authority where defendant claims that she never waived the $100,000 limitation.

In addition, this case presents many factual issues regarding Kennedy's apparent authority and plaintiff's reliance thereon. The court's determination, as a matter of law, that plaintiff could reasonably rely on Kennedy's apparent authority since defendant did not show that the facts and circumstances were such to put plaintiff on notice that Kennedy was exceeding his authority, lacks support in the record. The facts and circumstances in this case are such that a jury could conclude that since plaintiff was notified that defendant was unwilling to pay more that $100,000 for its services, plaintiff could not merely accept Kennedy's assurances that additional services were authorized by his client, but was required to make further inquiry of defendant herself (*Herbert Constr. Co. v Continental Ins. Co.*, 931 F2d 989 [2d Cir 1991]). Furthermore, since plaintiff had no contact with defendant, plaintiff cannot claim that defendant's misleading conduct caused it to reasonably rely on Kennedy's representations (*Ford v Unity Hosp.*, 32 NY2d 464, 473). We especially note that the reasonableness of plaintiff's reliance on Kennedy's representations is questionable since the fee ultimately sought by plaintiff was more than three times the original limitation insisted upon by defendant.

Since questions of fact exist regarding Kennedy's authority, the IAS Court improperly concluded as a matter of law that an account stated existed by virtue of Kennedy's failure to object to the services rendered and the amounts billed (*see, Bowne of N. Y. v International 800 Telecom Corp.*, 178 AD2d 138). Furthermore, defendant's refusal to meet with plaintiff to resolve the issue of outstanding fees and her insistence that plaintiff deal exclusively with Kennedy did not constitute a ratification of Kennedy's authority such that an account stated existed between plaintiff and defendant.

Finally, we would be remiss if we did not address the fact that this case presents very serious questions with respect to the necessity, propriety and value of plaintiff's services for which it charged defendant over $300,000 for investigative services rendered during a five and a half month period where several items of expense patently appear to be excessive.

Additional discovery is necessary to elucidate the numerous factual issues present in this case (CPLR 3101 [a]). Concur—Murphy, P. J., Carro, Wallach, Kassal and Nardelli, JJ.